766 P.2d 799

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Robert Steve HARRISON,
Defendant–Respondent.**

No. 17288.

Court of Appeals of Idaho.

Dec. 27, 1988.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Charles Sheroke, Coeur d'Alene, for defendant-respondent.

PER CURIAM.

In this case we must decide whether a search warrant was issued upon a proper finding of probable cause. The question is posed by the state in an interlocutory appeal from an order suppressing evidence seized under the warrant. *See* I.A.R. 11(c)(7). For reasons explained below, we reverse the suppression order.

The facts are undisputed. Robert Harrison was charged with manufacturing a controlled substance, marijuana, after Benewah County sheriff's deputies searched Harrison's residence and nearby sheds and found a large quantity of marijuana plants, related evidence and equipment. The search was conducted under a warrant issued upon information provided largely by a confidential informant. The informant's report was summarized by a deputy sheriff on April 13, 1987, in an oral affidavit to obtain the warrant. According to the deputy, the informant stated that on April 3, 1987, he had personally observed twenty to twenty-five marijuana plants growing in a shed beside Harrison's residence. The informant further related that when he visited Harrison's residence on April 7, 1987, Harrison showed him a tin box retrieved from beneath a couch in Harrison's living room. The box contained three ounces of "bud" (the street name for the flowering top of a marijuana plant). The informant said he had visited Harrison's residence

numerous times over the previous two years and had observed marijuana growing in the shed and packaged marijuana in the house. He reported that this marijuana had been offered for sale to him by Harrison. The informant gave a precise description of the shed, the residence, the layout of the property and directions to Harrison's property.

The deputy who applied for the warrant disclosed to the magistrate that he and another officer had visited Harrison's property the previous evening, to corroborate part of the information given by the informant. This visit confirmed the informant's description of the property's physical layout. The deputy stated that he had heard a humming sound on the property, which he believed to be caused by a halogen light used for growing marijuana. The deputy also vouched for the reliability of the informant. The officer reported that this informant on several previous occasions had supplied information to law enforcement agencies, including the sheriff's office, concerning the location of items of stolen property and the commission of several burglaries. Upon further investigation, this information had proven to be accurate. The same informant also twice previously had given information to the agencies which led to seizure of plants in other marijuana-growing operations in Benewah County. Finally, with respect to whether the informant was familiar in fact with marijuana, and therefore could identify the plants growing at Harrison's residence, the informant admitted to the deputy that "he had used marijuana previously himself."

Presented with this information, the magistrate issued a warrant to search Harrison's property. The subsequent search by the officers pursuant to the warrant yielded forty-two marijuana plants in various stages of development, halogen lights and related evidence.

After Harrison was arrested and held to answer in district court, he filed a motion to suppress the seized evidence. He argued that the warrant had been unsupported by probable cause. The district court agreed. The court determined that the nighttime visit by the deputies, for the purpose of corroborating the informant's report, was an illegal search. The court concluded that the officer's information, derived from that visit, should not be utilized to evaluate the probable cause finding of the magistrate. Then, upon excluding the officers' corroborative information, the district court held that the residual information presented to the magistrate was insufficient to constitute probable cause for issuance of the warrant. This appeal followed.

On appeal, the state does not challenge the district court's determination that the magistrate was presented with information illegally obtained by the officers' nighttime visit. Instead, the state argues that, even if the alleged illegal information is excluded, the residual information given by the informant established probable cause to issue the search warrant. Because we agree with the state's analysis, we need not address the nighttime search question.

The appropriate standard, to be applied by magistrates for determining the existence of probable cause, is a "totality of the circumstances" test. *State v. Lang,* 105 Idaho 683, 672 P.2d 561 (1983). Ordinarily, our function on appeal is to ascertain whether the magistrate had a substantial basis for concluding that probable cause existed. *State v. Johnson,* 110 Idaho 516, 716 P.2d 1288 (1986); *State v. Vargovich,* 113 Idaho 354, 743 P.2d 1007 (Ct.App.1987). However, that standard must be modified somewhat in the present case because the finding of probable cause—upon information excluding facts obtained during the nighttime entry—was not made by the warrant-issuing magistrate. It was made by the district judge. His finding is not subject to the same deferential review that would apply to a magistrate's finding upon first-hand examination of the evidence. Rather, we must decide whether we independently agree with the district judge, applying the "totality of circumstances" test.

Although the "totality of the circumstances" test has eliminated the rigid requirements of "veracity" and "basis of

knowledge" derived from the *Aguilar–Spinelli* decisions, *see Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed. 2d 637 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), these requirements remain useful first steps in determining whether probable cause exists. *State v. Johnson, supra; State v. Prestwich,* 110 Idaho 966, 719 P.2d 1226 (Ct.App.1986). This is particularly important in cases dealing with undisclosed informants. *State v. Prestwich, supra.*

█ Accordingly, we first consider the informant's basis of knowledge. The informant's report, as recited in the deputy sheriff's oral affidavit, contained one of the strongest possible indications of a basis of knowledge—personal observation with respect to a substance known by the informant to be marijuana. *See State v. Vargovich, supra.* The informant declared that he had seen marijuana "bud" at Harrison's residence and marijuana plants in Harrison's shed. He described particularly the locations where he saw the marijuana. He admitted familiarity with marijuana through personal use of the substance. Upon these facts, the basis of knowledge requirement was satisfied.

It is also quite clear that the "veracity" prong was met with respect to the informant in the instant case. The deputy's oral affidavit states that the confidential informant had proven reliable on no less than five previous occasions. Two of these occasions led to subsequent discoveries by the police of marijuana-growing operations in Benewah County. The affidavit amply demonstrates the informant's reliability. *See, Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *State v. Gomez,* 101 Idaho 802, 623 P.2d 110 (1980), *cert. denied,* 454 U.S. 963, 102 S.Ct. 503, 70 L.Ed.2d 378 (1981).

█ In concluding that the evidence should be suppressed, the district judge expressed concern with the veracity prong and the lack of other information buttressing or corroborating the specific information given by the informant. We believe the district court erred in concluding that the informant's report was insufficient due to lack of corroboration. In *Spinelli,* the United States Supreme Court stated that "[i]f the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should *then* be considered." 393 U.S. at 415, 89 S.Ct. at 588 (emphasis ours). Clearly, if the *Aguilar* prong is met, as is the case here, further "corroboration" is not needed.

The suppression order is reversed. Case remanded.